**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| L.C., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FERTILITY CENTERS OF ILLINOIS, PLLC,<br><br>Defendant. | Case No. 1:25-cv-2049<br><br>Hon. Rebecca R. Pallmeyer |

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

## TABLE OF CONTENTS

**PAGE**


INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 2

ARGUMENT ..... 5

I. PLAINTIFF HAS ARTICLE III STANDING BECAUSE SHE WAS INJURED BY DEFENDANT'S CONDUCT ..... 5

II. PLAINTIFF STATES PLAUSIBLE CLAIMS FOR RELIEF ..... 9

1. Plaintiff States a Claim for Negligence ..... 9
2. Plaintiff States a Claim for Unjust Enrichment ..... 11
3. Plaintiff States a Claim for Violation of the IES ..... 13

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Cosgrove v. Commonwealth Edison Co.*,
315 Ill. App. 3d 651 (2000) ..... 9

*CS Wang & Assoc. v. Wells Fargo Bank, N.A.*,
305 F. Supp. 3d 864 (N.D. Ill. 2018) ..... 8

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023) ..... 5, 7

*Doe v. Genesis Health Sys.*,
2024 WL 3890164 (C.D. Ill. Aug. 21, 2024) ..... 6

*Foman v. Davis*,
371 U.S. 178 (1962) ..... 15

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
131 Ill.2d 145 (Ill. 1989) ..... 12

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) ..... 6

*In re Recalled Abbott Infant Formula Prods. Liab. Litig.*,
97 F.4th 525 (7th Cir. 2024) ..... 6

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) ..... 12

*MetroPCS v. Devor*,
215 F. Supp. 3d 626 (N.D. Ill. 2016) ..... 12

*Smith v. Loyola Univ. Med. Ctr.*,
2024 WL 3338941 (N.D. Ill. July 9, 2024) ..... 5, 6, 7, 9

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ..... 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..... 5

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
489 U.S. 749 (1989) ..... 5

**STATUTES**

18 U.S.C. § 2511(1) .......... 1

720 ILCS § 5/14-1 .......... 1, 14

720 ILCS § 5/14-2(a)(3) .......... 14

720 ILCS § 5/14-2(a)(3)-(5) .......... 13

720 ILCS § 5/14-2(a)(4) .......... 14

720 ILCS § 5/14-2(a)(5) .......... 15

720 ILCS § 5/14-6 .......... 13

## INTRODUCTION

This is a simple case. Plaintiff L.C. ("Plaintiff") alleges that Defendant Fertility Centers of Illinois, PLLC ("Defendant") intentionally intercepts—and discloses to third parties—Plaintiff's and class members' sensitive and confidential health communications transmitted through Defendant's website, https://www.fcionline.com (the "Website"), without consent. Complaint ¶¶ 15, 98 (ECF No. 1). As detailed herein, Defendant's conduct is an invasion of privacy sufficient to confer Article III standing and violates the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), *et seq*. ("ECPA"), the Illinois Eavesdropping Statute, 720 ILCS § 5/14-1, *et seq*. ("IES"), and gives rise to claims for negligence and unjust enrichment.

Plaintiff alleges Defendant intentionally, and without the consent of Plaintiff and class members, aided Meta Platforms Inc. ("Meta") and Google, LLC ("Google") in intercepting sensitive and confidential health communications between Plaintiff (and class members) and Defendant through Defendant's embedding of Meta's and Google's tracking software (the Meta Pixel, Google Analytics, and Google Ads, collectively the "Tracking Technologies") on its Website. Complaint ¶¶ 8, 98. The Tracking Technologies captured Plaintiff's and class members' interactions with the Website, including their confidential communications regarding fertility treatments, and transmitted that information to Meta and Google. *Id.* ¶ 10. Defendant also aided Meta and Google in intercepting Plaintiff's and class members' private health information ("PHI"), including their status as medical patients, their health-related communications with Defendant through the Website, their disclosure of medical conditions and treatments, their search for specific doctors, the fact that Plaintiff and class members contacted Defendant for specific medical conditions, and Plaintiff's and class members' unique personal identifiers. *Id.* ¶ 100.

For the reasons set forth herein, Plaintiff respectfully submits that Defendant's Motion to Dismiss (ECF No. 9) ("MTD") should be denied in full.

## STATEMENT OF FACTS

Defendant provides fertility treatments such as artificial insemination, in vitro fertilization, and genetic testing. *Id.* ¶ 4. Defendant owns and controls the Website, through which it offers online medical services. *Id.* ¶ 5. Defendant encourages patients to use the Website to: 1) communicate with healthcare providers; 2) manage appointments for fertility services; and 3) share and search for information regarding patients' reproductive health. *Id.* ¶ 6. Patients (such as Plaintiff and class members) have a reasonable expectation of privacy over the PHI they communicate to Defendant over the Website. *Id.* ¶¶ 6, 14. Defendant, using the Tracking Technologies in conjunction with software cookies, collects Plaintiff's and class members' PHI and permits Meta and Google to intercept it along with information linking the information directly to Plaintiff and class members (such as disclosing their unique Facebook ID and Google User-ID). *Id.* ¶¶ 7-8, 10-11-12, 18-19.

In short, Defendant implemented the Tracking Technologies to collect and disclose to Meta and Google when and where Plaintiff and class members sought medical care, the medical conditions they inquired about, and the precise care they sought and received from Defendant. *Id.* ¶¶ 20-22, 31. This is so despite the fact that healthcare providers like Defendant are not permitted to use the Tracking Technologies in a way that exposes patients' PHI to third parties without express and informed consent, which Defendant did not obtain. *Id.* ¶¶ 13, 15-17, 32. As a result of engaging in the unlawful acts set forth herein, Defendant breached its duties and obligations to its patients (*i.e.* Plaintiff and class members). *Id.* ¶ 25.

Defendant's conduct injured Plaintiff and class members in the form of: 1) invasion of privacy; 2) loss of the benefit of the bargain; 3) compromise and disclosure of Plaintiff's and class members' valuable health information and personally identifiable information ("PII"); 4) diminution of value of Plaintiff's and class members' PII and PHI; 5) statutory damages; and 6) ongoing risk to Plaintiff's and class members' PII and PHI. *Id.* ¶ 26. Plaintiff and class members were further injured because Defendant disclosed their valuable PII and PHI without compensating Plaintiff and class members, thereby decreasing the value of their PII and PHI. *Id.* ¶¶ 153-174.

The information intercepted by the Tracking Technologies includes the following types of PHI and PII: 1) Plaintiff and class members' status as medical patients; 2) medical information patients requested or viewed on the Website; 3) the title of buttons clicked on the Website (such as a "Treatments" drop down page which identifies and communicates specific medical conditions and treatments); 4) the exact phrases typed by Plaintiff and class members into text boxes on the Website including searches for medical conditions and treatment and their search for specific doctors; 5) appointments made with specific doctors; and 6) patients' PII. *Id.* ¶¶ 70, 100. For example, when a patient accesses Defendant's Patient Portal, Defendant discloses those confidential communications to Google and Meta, all of which involve confidential medical information. *Id.* ¶¶ 103-106, Figures 1-8. Each of these divulgences were highly offensive to Plaintiff and class members. *Id.*

Using software cookies, Meta and Google were able to link the intercepted health information directly to Plaintiff and class members. *Id.* ¶¶ 72-74, 85-99, 101. The health information Defendant disclosed through the Tracking Technologies was personally identifiable and sent with unique identifiers (including patients' IP address, Facebook ID, User-IDs, and device identifiers) which were sufficient to link the PHI to Plaintiff and class members. *Id.* ¶ 75. Even if

a user of Defendant's Website is not a Facebook user, Meta still creates "shadow profiles" for non-users such that their health information is personally identifiable. *Id.* ¶ 150.

Defendant's disclosures violated the Health Insurance Portability and Accountability Act ("HIPAA"), specifically HIPAA's Privacy Rule. *Id.* ¶¶ 116-131. Defendant knew that the Tracking Technologies were not HIPAA compliant, as reported by numerous industry sources in the healthcare industry. *Id.* ¶¶ 147-149.

Defendant benefitted and was enriched by its unlawful use of the Tracking Technologies because they allowed Defendant to create targeted advertising campaigns to maximize conversions while decreasing Defendant's marketing costs. *Id.* ¶¶ 140, 144, 146, 152. Defendant in fact retargeted Plaintiff and class members with targeted advertising. *Id.* ¶ 151.

Plaintiff scheduled an appointment for fertility treatment on Defendant's Website on November 11, 2022, attended the appointment, and received fertility treatment from Defendant. *Id.* ¶¶ 28-29. At all relevant times, Plaintiff maintained a Facebook account. *Id.* ¶ 30. Plaintiff used the same device to book her appointment on the Website and to access Facebook. *Id.* Plaintiff's offsite activity report from Facebook confirmed that information regarding her use of the Website was in fact intercepted by Meta. *Id.* Neither Plaintiff nor class members consented to Defendant's conduct. *Id.* ¶ 108. Defendant's privacy policy does not disclose the interceptions at issue here. *Id.* ¶¶ 109-115. Plaintiff and class members had a reasonable expectation of privacy in their health information and PII and were aware of Defendant's duty of confidentiality regarding the same. *Id.* ¶¶ 134-139.

## ARGUMENT

### I. PLAINTIFF HAS ARTICLE III STANDING BECAUSE SHE WAS INJURED BY DEFENDANT'S CONDUCT

To establish Article III standing, "a plaintiff must show: (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Here, Defendant challenges only the first element, arguing Plaintiff has not established an injury in fact that is concrete and particularized. MTD at 4-8. Defendant is wrong.

Because Defendant raises only a facial challenge to standing, courts will accept Plaintiff's factual allegations as true and draw all reasonable inferences in favor of Plaintiff. *See Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *2 (N.D. Ill. July 9, 2024) ("For facial challenges to standing, the Court accepts all material factual allegations as true and construes all reasonable inferences in the plaintiff's favor."). To satisfy the "injury-in-fact requirement, the harm alleged must be concrete; that is, the injury must be real, not abstract." *Id.* at *3. "[I]ntangible harms can . . . be concrete," such as "disclosure of private information" and "intrusion upon seclusion." *TransUnion LLC*, 594 U.S. at 425; *Dinerstein v. Google, LLC*, 73 F.4th 502, 511 (7th Cir. 2023) ("Both tangible and intangible harms may fit the bill" for a concrete injury).

Where, as here, an intangible harm is asserted, courts will assess whether the injury has a close relationship to a harm recognized at common law, giving due regard to Congress's decision to impose a statutory prohibition. *Smith*, 2024 WL 3338941, at *3. "[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989). "In an era when millions of Americans conduct their affairs increasingly through

electronic devices, the assertion [Defendant] makes—that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data—is untenable." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019).

Courts considering identical conduct Defendants have found that a plaintiff has Article III standing to pursue privacy claims related to unlawful disclosure of PHI. *See Smith*, 2024 WL 3338941, at *4 ("Here, the plaintiffs have adequately pleaded injury-in-fact based on the alleged disclosure of their medical information that, at this stage, is sufficient to confer standing to seek both damages and injunctive relief. The alleged disclosure of the plaintiffs' sensitive health information has a close relationship to disclosure of private information, a common-law theory of harm.") (internal quotation marks and citation omitted); *accord Doe v. Genesis Health Sys.*, 2024 WL 3890164, at *6 (C.D. Ill. Aug. 21, 2024) ("The Court finds that the alleged disclosure of Plaintiff's status as a patient, her physician searches, her scheduling of telehealth appointments, and her identification of health conditions and the treatment sought for those conditions . . .; as well as her claims that she was subject to targeted ads as a result of the knowing and unauthorized transmission of her personal information, is sufficient to establish an injury in fact fairly traceable to Defendant."). This Court should reach the same conclusion.

Plaintiff plausibly alleges an injury in fact that is particularized, concrete, and actual. Plaintiff's injury is particularized because she was individually harmed by Defendant's conduct as someone who used the Website to book an appointment for fertility treatment, whose PHI and PII was surreptitiously transmitted to Meta and Google without her consent. Complaint ¶¶ 28-30, 108; *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 529 (7th Cir. 2024) ("For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way.") (internal citations omitted). Plaintiff's harm is concrete because it is an intangible harm (a privacy

violation stemming from disclosure of Plaintiff's private health information to third parties) that is traditionally recognized at common law (*i.e.* disclosure of private information). *Smith*, 2024 WL 3338941, at *4. Plaintiff's harm is actual because her information was disclosed as confirmed by the offsite activity report related to her Facebook account. Complaint ¶ 30. Therefore, Plaintiff satisfies the injury in fact requirement.

Defendant argues that Plaintiff fails to allege she "received any targeted ads based on the disclosure of [her] information[.]" MTD at 5. Though not required, Plaintiff alleges that Defendant retargeted her and class members with targeted advertising. Complaint ¶ 151. Regardless, the Website was bugged by the Tracking Technologies and functioned to surreptitiously transmit Plaintiff's personally identifiable health information to third parties, which itself creates an intangible harm recognized at common law. *Id.* ¶ 22. Plaintiff's offsite activity report from Facebook further confirms her personal information was disclosed. *Id.* ¶ 30.

Defendant relies on *Dinerstein*, but that case is distinguishable because it involved *anonymized* health records. MTD at 6; *Dinerstein*, 73 F.4th at 507. Here, by contrast, the PHI disclosed by Defendant was personally identifiable—it was linked to Plaintiff and class members through, among other identifiers, IP address, Facebook ID, and Google User ID, all of which identify Plaintiff and class members personally in conjunction with their PHI. Complaint ¶¶ 31, 72-75. As such, *Dinerstein* is inapposite.

Defendant claims Plaintiff's allegations are "conclusory", but that is wrong. Plaintiff provides granular detail how Defendant's Website is configured to transmit and disclose PII and PHI to third parties Meta and Google, which is then included into their advertising algorithms. MTD at 6; Complaint ¶¶ 102-108, Figures 2-8. Defendant also argues that the "Complaint does not attempt to identify the nature of Plaintiffs' communications with Defendant beyond receiving

fertility treatments." MTD at 6. But the fact that Defendant disclosed to third parties that Plaintiff made an appointment for fertility treatment is, itself, a disclosure of PHI and a violation of HIPAA. Complaint ¶¶ 28-32.

Next, Defendant complains Plaintiff offers only "barebones allegations that [she was] harmed and suffered losses." MTD at 6. That is incorrect and misunderstands Plaintiff's allegations. The very fact that Defendant disclosed Plaintiff's PHI and PII is a privacy harm. Plaintiff further identifies multiple types of injury, including: 1) invasion of privacy; 2) loss of the benefit of the bargain; 3) compromise and disclosure of Plaintiff's and class members valuable health information and PII; 4) diminution of value of Plaintiff's and class members' PII and PHI; 5) statutory damages; and 6) ongoing risk to Plaintiff's and class members' PII and PHI. Complaint ¶ 26. Plaintiff and class members were further injured because Defendant disclosed their valuable PII and PHI without compensating Plaintiff and class members, thereby decreasing the value of their PII and PHI. *Id.* ¶¶ 153-174.

Lastly, Defendant argues "Plaintiffs fail to allege with any particularity that future harm may occur as a result of their interactions with the Website." MTD at 8. But that misses the mark because Plaintiff's standing is not limited only to future harm. Instead, as set forth above, the harm has already occurred because Defendant aided Meta and Google in intercepting Plaintiff's PHI. In addition to the concrete harm that has already occurred, Plaintiff *also* faces the ongoing risk to her PII and PHI because of Defendant's disclosure of the same to third parties. Complaint ¶ 26. In short, the concrete privacy harm that Plaintiff has already incurred, along with the ongoing risk of harm, are both independently sufficient to confer Article III standing. *See CS Wang & Assoc. v. Wells Fargo Bank, N.A.*, 305 F. Supp. 3d 864, 880 (N.D. Ill. 2018) (Pallmeyer, J.) (holding Article III standing satisfied in wiretapping context where "Plaintiffs claim that they suffered two injuries

as a result of the alleged non-consensual recordings: they say that the practice itself violated their privacy, and that subsequently sharing and storing the recordings on cloud-based computer systems 'created a risk of data breach.'").

## II. PLAINTIFF STATES PLAUSIBLE CLAIMS FOR RELIEF

Plaintiff states a claim under the ECPA, for negligence, unjust enrichment, and for violation of the IES. Notably, Defendant does not move to dismiss the ECPA claim (other than its argument as to standing), and therefore that claim must survive. As detailed below, Defendant's arguments as to Plaintiff's negligence, unjust enrichment, and IES claims lack merit.

### 1. Plaintiff States a Claim for Negligence

"To properly state a cause of action in negligence, a plaintiff must establish the following elements: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the breach was the proximate cause of the plaintiff's injuries." *Cosgrove v. Commonwealth Edison Co.*, 315 Ill. App. 3d 651, 654 (2000). Defendant concedes, as it must, that it owed a duty to Plaintiff and class members . *See* MTD at 9; *see Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *9 (N.D. Ill. Feb. 21, 2025) ("The complaint alleges that [defendant] collected Plaintiffs' sensitive medical information and then disseminated that information to a third party without their consent. The collection of private health data is enough to give rise to a duty of care."); *Loyola University Medical Center*, 2024 WL 3338941, at *7 ("As this Court and other courts have discussed, however, the Illinois legislature has since created a duty that requires data collectors to maintain reasonable security measures under the Information Protection Act.") (internal citations omitted).

As to breach, Defendant argues that Plaintiff fails "to allege that Defendant breached [its] duty and that the breach was the proximate cause of the Plaintiff's injuries." MTD at 9. That is wrong. Defendant breached its duty to safeguard and keep confidential Plaintiff's medical

information by aiding third parties in intercepting Plaintiff's PII and PHI without consent, including by:

> (i) failing to adequately review its marketing programs and web-based technology to ensure its Website were safe and secure; (ii) failing to remove or disengage technology that was known and designed to share patients' information; (iii) failing to obtain the consent of Plaintiff and Class Members to disclose their PII and PHI to Facebook and Google or other third parties; (iv) failing to take steps to block the transmission of Plaintiff's and Class Members' PII and PHI through the Tracking Technologies; (v) failing to warn Plaintiff and Class Members about the Tracking Technology present on the Website; and (vi) otherwise failing to design and monitor its Website to maintain the confidentiality and integrity of patient PII and PHI.

Complaint ¶ 25; *see also* Complaint ¶ 32 ("By failing to receive the requisite consent, Defendant breached its duty of confidentiality and aided Facebook and Google in unlawfully intercepting Plaintiff's PII and PHI."). Defendant also breached its obligations under HIPAA by violating HIPAA's Privacy Rule. *See id.* ¶¶ 116-133. Defendant's breach proximately caused Plaintiff's injuries because Defendant intentionally implemented the Tracking Technologies on its Website, which transmitted Plaintiff's PII and PHI to third parties, causing injury to Plaintiff which would not otherwise have happened absent Defendant's conduct. *See id.* ¶ 47 ("Plaintiff's and Class Members' PII and PHI would not have been disclosed to Facebook but for Defendant's decisions to install the Meta Pixel on its Website."), ¶ 26 (itemizing injuries).

Defendant contends that Plaintiff fails "to allege that [her] reasonable expectation[] of privacy w[as] violated when [she] visited the Website." MTD at 9. Defendant's argument is belied by the allegations in the Complaint, which repeatedly state that Plaintiff and class members had a reasonable expectation of privacy in their personally identifiable health information. *See, e.g.,* Complaint ¶ 135 ("Indeed, when Plaintiff and Class Members provided their PII and PHI to Defendant, they each had a reasonable expectation that the information would remain private, and

that Defendant would not share the PII or PHI with third parties for a commercial purpose unrelated to patient care."). Yet, Defendant violated Plaintiff's reasonable expectation of privacy by disclosing her health information (i.e., her identity and seeking of fertility treatments) to Meta and Google without her consent. *Id.* ¶¶ 236-39.[1]

Defendant further claims Plaintiff fails to "allege a connection between entering their information into the fields of the Website and the targeted ads they received." MTD at 9. That is wrong because Plaintiff alleges she was retargeted with advertising by Defendant. Complaint ¶ 151. Regardless, Defendant's argument misses the point. As set forth above, Defendant breached its duty and caused harm to Plaintiff when it aided third parties Meta and Google in intercepting Plaintiff's and class members' private health information—this interception happened automatically through the function of the Tracking Technologies. *Id.* ¶¶ 8-10, 20-22. This is true regardless of whether Plaintiff received targeted advertisements connected to her treatment. Therefore, Defendant's argument does not present grounds for dismissal.[2]

**2. Plaintiff States a Claim for Unjust Enrichment**

"To state a cause of action for unjust enrichment, a plaintiff must establish: '(1) the defendant has unjustly retained a benefit to the plaintiff's detriment, and (2) the defendant's

---

[1] Defendant contends that Plaintiff does not allege that she "had a contractual relationship with the Defendant." MTD at 9. But Plaintiff does not bring a breach of contract claim, which renders this argument irrelevant. Plaintiff alleges that Defendant disclosed her private health information in violation of federal and state statutes and the common law, each of which are actionable regardless of the existence of a contract.

[2] Defendant further argues that "Plaintiff does not state anywhere in the Complaint that Defendant forced her to do anything on the Website." MTD at 10. The relevance of this argument is unclear as Plaintiff is not contending that Defendant forced her to use the Website. Plaintiff is contending that Defendant was not at liberty, as a healthcare provider handling HIPAA-protected information, to implement the Tracking technologies on its Website, which functioned to transmit her PHI relating to her fertility treatment to third parties, without her consent.

retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 634–35 (N.D. Ill. 2016) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160 (Ill. 1989)).

*First*, "Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of valuable sensitive medical information that Defendant collected from Plaintiff and Class Members under the guise of keeping this information private." Complaint ¶ 245. The benefit was retained by Defendant because it "collected, used and disclosed this information for its own gain including for advertisement purposes, sale or trade for valuable services from third parties." *Id.*; *see also id.* ¶ 248 ("Defendant unjustly retained those benefits at the expense of Plaintiff and Class Members because Defendant's conduct damaged Plaintiff and Class Members, all without providing any commensurate compensation to Plaintiff and Class Members.").

Defendant argues that Plaintiff does not allege that "any interactions [she] had with the Website conferred a benefit upon Defendant", but that argument is directly belied by the allegations above that Plaintiff conferred the benefit of valuable sensitive medical information to Defendant. MTD at 10; *Id.* ¶ 245.

Defendant continues that "[a]ny compensation paid by Plaintiffs to Defendant would have been for medical services[.]" MTD at 11. Defendant is mistaken, as the benefit conferred by Plaintiff related to the unjust enrichment claim is not the monetary value of the medical services provided, but the value of the sensitive medical information that Plaintiff entered onto Defendant's Website which was intercepted by third parties without her consent. A claim for unjust enrichment does not limit a benefit to just money, it can be information or data (such as health information). *See In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *19 (N.D. Ill. Oct. 1, 2024) (Pallmeyer, J.) ("Because Plaintiffs have plausibly alleged an actionable wrong in the

collection of their data and have alleged that Defendants monetized this data for their own benefit, the court finds their unjust enrichment claims legally sufficient.").

*Second*, Defendant's retention of the benefit violates the principles of justice, equity, and good conscience because the "benefits that Defendant derived from Plaintiff and Class Members was not offered by Plaintiff and Class Members gratuitously and rightly belongs to Plaintiff and Class Members" and Defendant should not be "permitted to retain any of the profit or other benefits wrongly derived from the unfair and unconscionable methods, acts and trade practices" associated with the use of the Tracking Technologies as described herein. Complaint ¶ 251.

### 3. Plaintiff States a Claim for Violation of the IES

The IES provides, in pertinent part:

> (a) A person commits eavesdropping when he or she knowingly and intentionally:
>
> . . .
>
> (3) Intercepts, records, or transcribes, in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication;
>
> (4) Manufactures, assembles, distributes, or possesses any electronic, mechanical, eavesdropping, or other device knowing that or having reason to know that the design of the device renders it primarily useful for the purpose of the surreptitious overhearing, transmitting, or recording of private conversations or the interception, or transcription of private electronic communications and the intended or actual use of the device is contrary to the provisions of this Article; or
>
> (5) Uses or discloses any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties.

720 Ill. Comp. Stat. Ann. 5/14-2(a)(3)-(5). The IES creates liability both for the eavesdropper and its "principal." 720 ILCS § 5/14-6. The IES defines a "principal" as someone who: "(1)

[k]nowingly employs another who illegally uses an eavesdropping device in the course of such employment; or (2) [k]nowingly derives any benefit or information from the illegal use of an eavesdropping device by another; or (3) [d]irects another to use an eavesdropping device illegally on his or her behalf." 720 ILCS § 5/14-1.

Here, Defendant is subject to liability under 720 ILCS § 5/14-2(a)(3) as a "principal" because it "knowingly derives a[] benefit or information from the illegal use of an eavesdropping device by [Meta and Google]" and directed Meta and Google to "use an eavesdropping device illegally on [its] behalf." *Id.*; Complaint ¶ 152 ("Thus, utilizing the Tracking Technologies directly benefits Defendant by, among other things, reducing the cost of advertising and retargeting."); *see also* Complaint ¶¶ 247, 253, 268 ("Defendant acted as Facebook and Google's 'principal' under the IES. By deploying the source code from Facebook and Google on its Website, Defendant directed that Facebook and Google illegally eavesdrop on Plaintiff's private electronic communications on its behalf and Defendant knowingly derived benefits and information from the illegal eavesdropping in the form of marketing."). Because Defendant acted as Meta and Google's principal, Defendant's argument that it "is a party to the communications because the communications Plaintiffs are alleging as unlawful occurred on the Defendant's Website" is inapposite because it is subject to liability as a "principal." MTD at 11.

Defendant also directly violated 720 ILCS § 5/14-2(a)(4) "by possessing the source code, knowing that its design rendered it primarily useful for surreptitiously intercepting private electronic communications contrary to the IES." Complaint ¶ 269. 720 ILCS § 5/14-2(a)(4) does not have a non-party limitation and therefore Defendant's argument that it is a party has no bearing on its violation of subsection (a)(4). MTD at 11.

Plaintiff's claim under 720 ILCS § 5/14-2(a)(5) is derivative of Defendant's violations of Subsections (a)(3) and (4). Defendant's violation of 720 ILCS § 5/14-2(a)(5) is actionable even if the party exception is applied to Plaintiff's claim under subsection (a)(3), as Defendant's violation of subsection (a)(4) independently forms the predicate violation sufficient to support a claim under subsection (a)(5).

Finally, Defendant argues that its "Notice of Privacy Practices . . . cuts against any intent to violate the IES . . ." MTD at 12. That is wrong. Defendant intentionally included the Tracking Technologies into its Website which it knew would function to collect and transmit Plaintiff's and class members' protected health information to third parties, as that is the only function of the Tracking Technologies. Complaint ¶¶ 15-22.

## CONCLUSION

For the foregoing reasons, Defendant's MTD should be denied. If the motion is granted in any respect, Plaintiff respectfully requests leave to amend to cure any deficiencies. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

DATED: May 23, 2025

Respectfully submitted,

/s/ *Alec M. Leslie*

**BURSOR & FISHER, P.A.**
Alec M. Leslie
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7126
E-Mail: aleslie@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (*pro hac vice* forthcoming)
Stephen A. Beck
701 Brickell Avenue, Suite 2100
Miami, FL 33131

Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com
sbeck@bursor.com

*Attorneys for Plaintiff*