**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| L.C., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FERTILITY CENTERS OF ILLINOIS, PLLC,<br><br>Defendant. | Case No. 1:25-cv-02049<br><br>Magistrate Judge Gabriel A. Fuentes |

**PLAINTIFF'S UNCONTESTED MOTION FOR AND MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**PAGE(S)**


I. INTRODUCTION ..... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 2

A. Plaintiff's Allegations ..... 2

B. Litigation, Negotiation, and Settlement ..... 2

III. TERMS OF THE SETTLEMENT AGREEMENT ..... 3

A. Class Definition ..... 4

B. Monetary Relief ..... 4

C. Payment of Settlement Notice and Administrative Costs ..... 4

D. Payment of Attorneys' Fees, Costs, and Incentive Award ..... 5

IV. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND NOTICE DIRECTED TO THE PROPOSED SETTLEMENT CLASS ..... 5

A. The Settlement Class Can Be Certified ..... 6

1. The Settlement Class Is Sufficiently Numerous. ..... 6

2. Common Issues of Fact and Law Predominate. ..... 7

3. Plaintiff's Claims Are Typical of Settlement Class Members' Claims. ..... 8

4. The Adequacy Requirement Is Satisfied. ..... 9

5. A Class Action Is a Superior Method of Resolving the Controversy. ..... 10

6. The Class Is Ascertainable. ..... 12

B. The Proposed Settlement Warrants Preliminary Approval ..... 13

1. Plaintiff and Proposed Class Counsel Have Adequately Represented the Settlement Class. ..... 13

2. The Settlement Was Negotiated at Arm's Length. ..... 14

3. The Relief Provided for the Class Is Adequate. ..... 15

a) The Benefits Of Settlement Outweigh The Cost, Risk, And Delay Of Further Litigation. ..... 16

b) The Proposed Method Of Distributing Relief To The Settlement Class Is Effective. ....................................................17

c) The Terms Of The Requested Attorneys' Fees Are Reasonable. ....................................................................18

d) There Are No Side Agreements Separate From The Settlement Agreement. ...............................................19

4. The Settlement Treats Class Members Equitably. ....................................19

C. The Proposed Notice Plans Should Be Approved in Form and Substance ........................................................................................ 20

V. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .......... 21

VI. CONCLUSION ........................................................................................ 22

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alvarado v. Int'l Laser Prods., Inc.*,
No. 18-cv-7756, Dkt. 70 (N.D. Ill. Jan. 24, 2020)........................................................... 18

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
2011 WL 3290302 (N.D. Ill. July 26, 2011) ........................................................................ 14

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................................. 11

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
568 U.S. 455 (2013) ............................................................................................................... 6

*Arreola v. Godinez*,
546 F.3d 788 (7th Cir. 2008) .................................................................................................. 6

*Barnes v. Air Line Pilots Ass'n, Int'l*,
310 F.R.D. 551 (N.D. Ill. 2015) ............................................................................................. 6

*Beaton v. SpeedyPC Software*,
907 F.3d 1018 (7th Cir. 2018) ................................................................................................ 8

*Bell v. PNC Bank, Nat'l Ass'n*,
800 F.3d 360 (7th Cir. 2015) .................................................................................................. 7

*Beltran v. Sony Pictures Entertainment, Inc.*,
1:22-cv-04858 (N.D. Ill.)................................................................................................. 1, 16

*Bernal v. NRA Grp. LLC*,
318 F.R.D. 64 (N.D. Ill. 2016) ......................................................................................... 11, 12

*Boelter v. Hearst Commc'ns, Inc.*,
269 F. Supp. 3d 172 (S.D.N.Y. 2017) ................................................................................. 10

*CE Design Ltd. v. King Architectural Metals, Inc.*,
637 F.3d 721 (7th Cir. 2011) .................................................................................................. 8

*Charvat v. Valente*,
2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ................................................................... 15, 17

*Cornejo v. Amcor Rigid Plastics USA, LLC*,
No. 1:18-cv-07018, Dkt. 57 (N.D. Ill. Sept. 10, 2020) .......... 18

*Doe v. Partners Healthcare System, Inc.*,
No. 19-1651-BLS1 (Mass. Super. Ct. Jan. 20, 2022) .......... 1

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014) .......... 10

*Fischer v. Instant Checkmate LLC*,
2022 WL 971479 (N.D. Ill. Mar. 31, 2022) .......... 8, 11

*Gaston v. FabFitFun, Inc.*,
2021 WL 3362028 (C.D. Cal. Apr. 2, 2021) .......... 2

*Goldsmith v. Tech. Sols. Co.*,
1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) .......... 16

*Gomez v. St. Vincent Health, Inc.*,
649 F.3d 583 (7th Cir. 2011) .......... 9

*Howard v. Cook Cnty. Sherriff's Office*,
989 F.3d 587 (7th Cir. 2021) .......... 7, 8, 9

*Jackson v. Fandango Media, LLC*,
Case No. 2023LA000631 (Ill. Cir. Ct. DuPage Cnty.) .......... 1, 16

*Jackson v. Nat'l Action Fin. Servs., Inc.*,
227 F.R.D. 284 (N.D. Ill. 2005) .......... 11

*Lechuga v. Elite Eng'g, Inc.*,
559 F. Supp. 3d 736 (N.D. Ill. 2021) .......... 9

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) .......... 8

*Molinari v. Fin. Asset Mgmt. Sys., Inc.*,
2020 WL 4345418 (N.D. Ill. July 29, 2020) .......... 21

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) .......... 6, 11, 12

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) .......... 19

*Pawelczak v. Fin. Recovery Servs., Inc.*,
286 F.R.D. 381 (N.D. Ill. 2012) .......... 11

*Perez v. Rash Curtis & Assocs.*,
2021 WL 4503314 (N.D. Cal. Oct. 1, 2021) .......... 10

*Retired Chi. Police Ass'n v. City of Chi.*,
7 F.3d 584 (7th Cir. 1993) .......... 9

*Saarloos v. The Cowboy Channel, LLC*,
Case No. 5:24-cv-02058-KK-SP (C.D. Cal.) .......... 1, 16

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .......... 17

*Snyder v. Ocwen Loan Servicing, LLC*,
2019 WL 2103379 (N.D. Ill. May 14, 2019) .......... 13, 14

*Spano v. The Boeing Co.*,
633 F.3d 574 (7th Cir. 2011) .......... 8

*Starr v. Chi. Cut Steakhouse*,
75 F. Supp. 3d 859 (N.D. Ill. 2014) .......... 9

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) .......... 7

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) .......... 16

*T.K. through Leshore v. Bytedance Tech. Co., Ltd.*,
2022 WL 888943 (N.D. Ill. Mar. 25, 2022) .......... *Passim*

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .......... 7

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 7

*Wright v. Nationstar Mortg. LLC*,
2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) .......... 11

*Young v. Rolling in the Dough, Inc.*,
2020 WL 969616 (N.D. Ill. Feb. 27, 2020) .......... 15, 17

**RULES**


Fed. R. Civ. P. 23 .......... *Passim*

Fed. R. Civ. P. 23(a) .......... *Passim*

Fed. R. Civ. P. 23(a)(1) .......... 6

Fed. R. Civ. P. 23(a)(2) .......... 7

Fed. R. Civ. P. 23(a)(3) .......... 8

Fed. R. Civ. P. 23(a)(4) .......... 9, 21

Fed. R. Civ. P. 23(b)(3) .......... *Passim*

Fed. R. Civ. P. 23(e) .......... 5, 15

Fed. R. Civ. P. 23(e)(1)(B) .......... 5, 13, 20

Fed. R. Civ. P. 23(e)(2) .......... *Passim*

Fed. R. Civ. P. 23(e)(2)(A) .......... 13

Fed. R. Civ. P. 23(e)(2)(B) .......... 14

Fed. R. Civ. P. 23(e)(2)(C) .......... 15, 18, 19

Fed. R. Civ. P. 23(e)(2)(C)(i) .......... 16

Fed. R. Civ. P. 23(e)(2)(C)(iii) .......... 18

Fed. R. Civ. P. 23(e)(2)(C)(iv) .......... 19

Fed. R. Civ. P. 23(e)(2)(D) .......... 19

Fed. R. Civ. P. 23(g) .......... 21

Fed. R. Civ. P. 23(g)(1)(A) .......... 21

Fed. R. Civ. P. 26 .......... 3


**OTHER AUTHORITIES**


Newberg and Rubenstein on Class Actions (6th ed.) .......... 5

## I. INTRODUCTION

Plaintiff L.C. ("Plaintiff") respectfully requests that this Court grant preliminary approval to the Parties' proposed Class Action Settlement Agreement.[1] After nearly a year and a half of litigation and months of negotiation—including a full-day settlement conference with Hon. Gabriel A. Fuentes—the Parties have reached a proposed class-wide settlement that, if approved, will resolve the claims asserted against Fertility Centers of Illinois, PLLC ("FCI" or "Defendant") in this Action and provide significant relief to the proposed Settlement Class.

Plaintiff alleges that FCI violated the federal the Electronic Communications Privacy Act ("ECPA"), the Illinois Eavesdropping Statute ("IES") and Illinois contract and tort law due to FCI's alleged installation and use of the pixel advertising technology embedded on its website, www.fcionline.com. Under the Settlement Agreement's terms, FCI has agreed to establish a non-reversionary Settlement Fund of $375,000 to be shared *pro rata* by claiming Settlement Class Members (net of administrative expenses, attorneys' fees and costs, and a service award). Class Counsel estimate that each claiming Settlement Class Member will receive a payment of around $30-60.

This is significant relief by any measure and meets or exceeds the relief provided in a similar privacy-related class action settlements. *See, e.g.*, *Jackson v. Fandango Media, LLC*, Case No. 2023LA000631 (Ill. Cir. Ct. DuPage Cnty.) (providing claiming class members $5 cash payment or $15 movie ticket voucher); *Beltran et al v. Sony Pictures Entertainment, Inc.*, 1:22-cv-04858 (N.D. Ill.) (providing approximately $30 per class member); *Saarloos v. The Cowboy Channel, LLC*, Case No. 5:24-cv-02058-KK-SP (C.D. Cal.) (providing approximately $6.45 per class member); *Doe v. Partners Healthcare System, Inc.,* No. 19-1651-BLS1 (Mass. Super. Ct.

[1] Capitalized terms used in this motion are defined in the Class Action Settlement Agreement (the "Settlement" or "Settlement Agreement"), submitted herewith as Exhibit 1.

Jan. 20, 2022) (recovery of $6.21 per class member); *Gaston v. FabFitFun, Inc.,* No. 2:20-CV-09534-RGK-E, 2021 WL 3362028, at *6–8 (C.D. Cal. Apr. 2, 2021) ($1.42 per class member is "substantial" relief "on par with that in other data breach settlements").

In light of this relief, as well as other considerations discussed below, the proposed Settlement Agreement more than satisfies the requirements for preliminary approval under Rule 23. Accordingly, Plaintiff respectfully requests that this Court preliminarily approve the proposed Settlement Agreement, certify the proposed Settlement Class for settlement purposes, direct that notice be provided to Settlement Class Members, and schedule a final fairness hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Allegations

Plaintiff filed this class action lawsuit on February 27, 2025 (Dkt. 1) (the "Compl.") Defendant is a fertility service provider that owns and operates the website, fcionline.com. (Compl. ¶¶ 4-5.) Plaintiff alleges that Defendant violated the ECPA, IES, and Illinois common law due to Defendant's installation and use of Google and Facebook's advertising tracking technology on Defendant's website. (*Id*. ¶¶ 8-10.)

### B. Litigation, Negotiation, and Settlement

Defendant moved to dismiss Plaintiff's Complaint on April 21, 2025. (Dkt. No. 9.) Defendant also moved to stay discovery pending its motion to dismiss on May 20, 2025. (Dkt. No. 15.) The Court granted Defendant's motion to stay discovery. (Dkt. No. 16.) Plaintiff opposed Defendant's motion to dismiss on May 23, 2025 (Dkt. No. 17), and Defendant filed its reply brief on June 13, 2025. (Dkt. No. 18.) While Defendant's motion was pending, on September 3, 2025, Plaintiff filed a notice of supplemental authority (Dkt. No. 22) and on September 10, 2025, Defendant filed a response thereto (Dkt. No. 23). The Court denied Defendant's motion to dismiss on December 8, 2025. (Dkt. No. 24.)

Since the pendency of Plaintiff's lawsuit, as the parties are required to do so under Fed. R. Civ. P. 26, the parties had arm's-length discussions about the possibility of settlement. (Declaration of Alec M. Leslie ("Leslie Decl.") ¶ 5.)[2] To that end, the parties ultimately agreed to participate in a settlement conference before Magistrate Judge Gabriel A. Fuentes. In order to allow the Parties to meaningfully engage at the mediation, they engaged in informal discovery in advance. (*Id.*) Plaintiff sought data reflecting the potential class size and information about the metrics Defendant maintained regarding visits to and interactions with its website, which Defendant provided. (*Id.* ¶ 6.) With this data in hand, the Parties exchanged detailed and thorough mediation statements, which addressed relevant facts, the strength of the claims and defenses at issue, and recent developments in the data privacy-related settlement landscape. (*Id.* ¶ 7.) The Parties then attended a full-day settlement conference with Judge Fuentes on May 27, 2025. (*Id.* ¶ 8.) Despite multiple rounds of back-and-forth negotiations facilitated by Judge Fuentes, the Parties were unable to reach an agreed resolution during the mediation. (*Id.*)

Over following weeks, the Parties continued to discuss the possibility of settlement at arm's length, facilitated by Judge Fuentes. Ultimately, on June 18, 2025, the Parties accepted a mediator's proposal from Judge Fuentes. (*Id.* ¶ 9.) The Parties spent approximately two months negotiating the final details of the Settlement Agreement that Plaintiff now presents to the Court for preliminary approval. (*Id.* ¶ 10.)

## III. TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth fully in the Class Action Settlement Agreement, and are briefly summarized here:

---

[2] The Leslie Declaration is submitted herewith as Exhibit 2.

**A. Class Definition**

The Settlement Class is defined as: All persons in the United States who, from September 1, 2020 through December 31, 2024, accessed and used the Defendant's website (www.fcionline.com). Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action, any members of the Judges' respective staffs, and members of the Judge's family; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons. (Settlement § 1.29.)

**B. Monetary Relief**

Pursuant to the Settlement, FCI will establish a non-reversionary Settlement Fund in the amount of $375,000. (*Id.* § 1.31.) Each Settlement Class Member who submits a valid Claim Form shall be entitled to payment of a *pro rata* share of the Settlement Fund after payment of Settlement Administration Expenses, attorneys' fees and costs, and any incentive award, if approved by the Court. Class Counsel estimate that each claiming Settlement Class Member will receive a net payment of around $30-60. (Leslie Decl. ¶ 15.)

Any checks that remain uncashed after 180 days of issuance, and any electronic deposits unable to be processed within 180 days of the first attempt, shall remain in the Settlement Fund to be distributed *pro rata* to claiming Settlement Class Members, if practicable, or in a manner otherwise directed by the Court upon application made by one of the parties. (Settlement § 2.1(d).) No portion of the Settlement Fund will revert to Defendant should the settlement be approved.

**C. Payment of Settlement Notice and Administrative Costs**

All Settlement notice and administration costs shall be paid from the Settlement Fund. (*Id.*

§ 1.31.) This includes all expenses incurred by the Settlement Administrator in, or relating to, administering the Settlement, providing Notice, creating and maintaining the Settlement Website, receiving and processing Claim Forms, dispersing settlement payments, and any other related expenses.

### D. Payment of Attorneys' Fees, Costs, and Incentive Award

As part of the Settlement, Defendant has agreed that Class Counsel are entitled to reasonable attorneys' fees in an amount to be determined by the Court. (*Id.* § 8.1.) Proposed Class Counsel has agreed to limit its request to 35% of the Settlement Fund and no more than $10,000 in litigation costs and expenses, with no consideration from Defendant. (*Id.*) Defendant has also agreed, subject to Court approval, to pay Plaintiff a service award in the amount of $10,000 from the Settlement Fund in recognition of her efforts as Class Representative. (*Id.* § 8.3.) Plaintiff will move for these payments via a separate request after preliminary approval and prior to the deadline to object.

## IV. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND NOTICE DIRECTED TO THE PROPOSED SETTLEMENT CLASS

Approval of a class action settlement proceeds in three stages. First, the parties present a proposed settlement to the court for preliminary approval. Second, if the court preliminarily approves the settlement, notice of the proposed settlement is sent to the class, and class members are given an opportunity to object or opt out of the settlement. Third, after holding a final fairness hearing, the court decides whether to give final approval to the settlement. *See* Fed. R. Civ. P. 23(e); 4 Newberg and Rubenstein on Class Actions § 13:1 (6th ed.).

At the first stage, preliminary approval, the parties must show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, both elements are satisfied.

### A. The Settlement Class Can Be Certified

Taking the second prong first, this Court will be able to certify the Settlement Class for purposes of entering the final judgment. District courts have broad discretion to determine whether class certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). To merit certification, the Settlement Class must satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Additionally, where, as here, certification is sought pursuant to Rule 23(b)(3), it must be shown that (i) common questions of law or fact predominate over individual issues and (ii) a class action is the superior device to resolve the claims. *Id*. Finally, Rule 23 contains an implicit "ascertainability" requirement "that classes be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). The proposed Settlement Class here satisfies all the Rule 23(a) and (b)(3) prerequisites as well as Rule 23's implicit ascertainability requirement.

#### 1. The Settlement Class Is Sufficiently Numerous.

A class action may proceed when the proposed class "is so numerous that joinder of all members is impracticable." Fed R. Civ. P. 23(a)(1). "A plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1), and the court may make common sense assumptions to determine numerosity." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (internal citation omitted). While there is no "magic number" at which numerosity exists, courts have typically found the element satisfied when the class includes at least forty people. *Id*. Here, Defendant identified thousands of potential individuals in the Settlement Class, which easily satisfies the numerosity requirement.

### 2. Common Issues of Fact and Law Predominate.

Rule 23(a)(2)'s commonality requirement—that "there are questions of law or fact common to the class"—and Rule 23(b)(3)'s predominance requirement—that such questions "predominate over any questions affecting only individual members"—are closely related and often analyzed together. *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) ("[T]he question of commonality and predominance overlap in ways that make them difficult to analyze separately").

Common questions are those that are "capable of class-wide resolution" such "that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Bell*, 800 F.3d at 374 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "What matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotations omitted). As such, "the critical point is the need for *conduct* common to members of the class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (internal quotations omitted). "Where the defendant's allegedly injurious conduct differs from plaintiff to plaintiff, . . . no common answers are likely to be found." *Id.* But where "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members," commonality exists. *Id*.

Predominance, in turn, "builds on commonality." *Howard v. Cook Cnty. Sherriff's Office*, 989 F.3d 587, 607 (7th Cir. 2021). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted). Predominance is satisfied "when common questions represent a significant aspect of [the] case and can be resolved for all members of [the] class in a single

adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (cleaned up). "The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018).

Here, common issues of law and fact exist and predominate because each Settlement Class Member makes the same contention arising out of the same alleged course of conduct: that FCI violated the ECPA and IES by embedding tracking technology on its website, thereby disclosing personally identifiable information and to third parties (Google and Facebook) in alleged violation of the law.

**3. Plaintiff's Claims Are Typical of Settlement Class Members' Claims.**

The next certification prerequisite—typicality—requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality examines whether there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). "As a general matter, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard*, 989 F.3d at 605 (internal quotations omitted). In other words, when the basis of the suit is the defendant's systematic business practices toward the named plaintiff and the members of the proposed class, typicality is generally satisfied. *See Fischer*, 2022 WL 971479 at *7 ("[T]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions.") (quoting *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011)).

Here, there is nothing separating Plaintiff's claims from that of any other Settlement Class Member. Plaintiff asserts that FCI violated her privacy by disclosing her PII and website activity to Google and Facebook through Defendant's use of the tracking technologies on its website, without her consent—precisely the violative conduct it is alleged to have done with respect to every other Settlement Class Member. Because Plaintiff's claims arise from the same course of conduct and are based on the same legal theory as the claims of all other Settlement Class Members—that is, the claims "have the same essential characteristics," *Howard*, 989 F.3d at 605—typicality is satisfied.

**4. The Adequacy Requirement Is Satisfied.**

The final Rule 23(a) prerequisite—adequacy—requires a finding that the class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement comprises two parts: (1) adequacy of the named plaintiff as representative of the proposed class's myriad members, and (2) adequacy of the proposed class counsel. *Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736, 742 (N.D. Ill. 2021) (citing *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011)). Here, both Plaintiff and proposed Class Counsel are more than adequate.

To be an adequate representative, "the named Plaintiff[] must not have 'antagonistic or conflicting claims.'" *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014) (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993)). Plaintiff has no such antagonism toward or conflict with the class, as her claims and interests in this litigation are completely aligned with those of the Settlement Class Members. (*See* § IV(A)(2)–(3), *supra*.) Where "the claims of the named Plaintiff[] are essentially identical to those of the proposed class members," and "[t]here are no individual defenses or other claims that would in any way impede

the named Plaintiff[']s[] ability to adequately represent the interest of the class members," the named Plaintiff is an adequate class representative. *Starr*, 75 F. Supp. 3d at 874.

Likewise, proposed Class Counsel satisfies the adequacy requirement. Bursor & Fisher, P.A. has extensive experience litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Bursor & Fisher, P.A., submitted herewith as Exhibit 3.) "The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in [six] class action jury trials since 2008." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014). In 2019, the firm won its sixth jury verdict in *Perez v. Rash Curtis & Associates*, No. 4:16-cv-03396-YGR (N.D. Cal.), a TCPA case, for $267 million. The *Perez* case ultimately settled for $75.6 million. *See Perez v. Rash Curtis & Assocs.*, No. 4:16-cv-03396, 2021 WL 4503314 (N.D. Cal. Oct. 1, 2021). The firm has also litigated, tried, and settled numerous high-profile class action cases involving statutes like the IRPA. *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017) (granting named plaintiff's motion for summary judgment in PPPA case ultimately resulting in $50 million settlement). Bursor & Fisher has diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency. (Leslie Decl. ¶ 19.)

Accordingly, because both Plaintiff and Class Counsel will fairly and adequately protect the interests of the Class, the adequacy requirement—like the other Rule 23(a) factors—is satisfied.

**5. A Class Action Is a Superior Method of Resolving the Controversy.**

The proposed Settlement Class also satisfies the requirements of Rule 23(b)(3). In addition to the predominance requirement discussed above, Rule 23(b)(3) requires that "a class action [be]

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule sets out four criteria germane to this inquiry, *id*., but only the first three are relevant when class certification is sought as part of a settlement. *Wright v. Nationstar Mortg. LLC*, 2016 WL 4505169, at *3 (N.D. Ill. Aug. 29, 2016) ("In the context of certifying classes for settlement purposes only, the Supreme Court has held that certification must meet the usual requirements of Rule 23(a) and (b), *except for* the manageability prong of Rule 23(b)(3)(D).") (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–20 (1997)).

The first consideration—"class members' interests in individually controlling the prosecution or defense of separate actions," Fed. R. Civ. P. 23(b)(3)(A)—weighs in favor of superiority here. There is no indication that any Class Member has brought an individual ECPA or IES suit against FCI; indeed, "many class members may be unaware of their rights under [the ECPA or IES]." *Bernal v. NRA Grp. LLC*, 318 F.R.D. 64, 76 (N.D. Ill. 2016). Class Members' interest in individually controlling a separate action is therefore "minimal." *Id.* Further, the modest statutory damages amount available under the ECPA relative to the high costs of retaining adequate counsel "is unlikely to provide sufficient incentive for individual members to bring their own claims." *Fischer*, 2022 WL 971479, at * 13 (quoting *Pawelczak v. Fin. Recovery Servs., Inc.*, 286 F.R.D. 381, 387 (N.D. Ill. 2012); *see also Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) ("A class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually.").

The second consideration—"the extent and nature of any litigation concerning the controversy already begun by or against class members," Fed. R. Civ. P. 23(b)(3)(B)—is not applicable here. There are no other known actions addressing the conduct alleged, and this consideration thus "is not a factor." *Bernal*, 318 F.R.D. at 76.

The third consideration—"the desirability or understandability of concentrating the litigation of the claims in [this] forum," Fed. R. Civ. P. 23(b)(3)(C)—also weighs in favor of superiority. FCI is headquartered in this District, and therefore, this Court is an appropriate forum in which to concentrate the litigation and settlement of these aggregated claims.

Furthermore, not only do the relevant criteria expressly laid out in Rule 23(b)(3) support a finding of superiority, an overall consideration of "both the costs *and benefits* of the class device" does as well. *Mullins*, 795 F.3d at 663. Consolidating class members' claims in one proceeding will generate economies of time and expense and promote legal uniformity. In contrast, requiring individual cases "would make no sense," because "[p]arallel litigation for each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal bases for recovery." *Bernal*, 318 F.R.D. at 76.

**6. The Class Is Ascertainable.**

Finally, in addition to satisfying the explicit requirements of Rule 23(a) and (b)(3), the proposed class satisfies Rule 23's implicit ascertainability requirement, which requires that a class "be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. "Under the 'weak' version of ascertainability employed by the Seventh Circuit, courts worry most about 'the adequacy of the class definition itself,' not 'whether, given an adequate class definition, it would be difficult to identify particular members of the class.'" *T.K. through Leshore v. Bytedance Tech. Co., Ltd.*, 2022 WL 888943, at *3 (N.D. Ill. Mar. 25, 2022) (quoting *Mullins*, 795 F.3d at 654).

Here, the Settlement Class is defined as "all persons in the United States who, from September 1, 2020 through December 31, 2024, accessed and used the Defendant's website." (Settlement § 1.29.) This definition is—as required—clear and based on objective criteria. Furthermore, while the "weak" version of ascertainability used in this Circuit does not require the

actual identification of all class members, *T.K.*, 2022 WL 888943 at *2–3, here, all Settlement Class Members can be readily identified through Defendant's records.

Because the proposed Settlement Class satisfies all of Rule 23(a) and (b)'s explicit requirements for certification, as well as the implicit ascertainability requirement, the Settlement Class can be certified for purposes of settlement and for purposes of entering final judgment after final approval, if granted.

### B. The Proposed Settlement Warrants Preliminary Approval

In addition to showing that the Settlement Class is certifiable, the parties must also show that the Court "will likely be able to … approve the [settlement] proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). Rule 23(e)(2) requires the Court to find that the settlement is "fair, reasonable, and adequate" after considering whether: (A) the class representative and class counsel have adequately represented the class; (B) the settlement was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The proposed Settlement in this case easily satisfies these requirements.

#### 1. Plaintiff and Proposed Class Counsel Have Adequately Represented the Settlement Class.

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). This factor "look[s] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment (hereinafter "2018 Committee Notes"). Ultimately, where the named plaintiff "participated in the case diligently … [a]nd class counsel fought hard throughout the litigation," *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019), and where "Class Counsel had 'an adequate information

base' while negotiating for the settlement," *T.K.*, 2022 WL 888943 at *11 (quoting 2018 Committee Notes), this factor is satisfied.

Here, Plaintiff diligently participated in the case by helping Class Counsel investigate her claims, assisting in the preparation of and reviewing the Complaint before filing, becoming familiar with the case more generally, keeping up to date on the case, personally attending and participating in a full-day in-person settlement conference, and reviewing and approving the Settlement Agreement before signing it. (Leslie Decl. ¶ 20.) In other words, she has and continues to adequately represent the Settlement Class.

Class Counsel's performance in this case likewise satisfies this factor. They "fought hard throughout the litigation," briefing and defeating Defendant's attempt to dismiss the case, "and pursued mediation when it appeared to be an advisable and feasible alternative." *Snyder*, 2019 WL 2103379 at *4. Prior to settling, the Parties exchanged informal discovery, as well as mediation briefs, providing Class Counsel with "an adequate information base" on which to negotiate. *T.K.*, 2022 WL 888943 at *11; *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the parties have enough information "to evaluate the merits of this case").

### 2. The Settlement Was Negotiated at Arm's Length.

Like the first rule 23(e)(2) factor, the second factor—whether the settlement was negotiated at arm's length—addresses a "procedural" concern. Fed. R. Civ. P. 23(e)(2)(B); 2018 Committee Notes. And again, this factor is satisfied here.

The arm's-length-negotiation requirement "aim[s] to root out settlements that may benefit the plaintiffs' lawyers at the class's expense." *T.K.*, 2022 WL 888943 at *11 (internal quotation omitted). Here, there was no collusion between Class Counsel and Defendant to take advantage of

the Class. A settlement was reached only after a failed settlement conference on May 27, 2025, followed by weeks of additional negotiation at arm's length, culminating in the acceptance of a mediator's proposal.

In addition, "[t]he best evidence of a truly adversarial bargaining process is the presence of a neutral third-party mediator." *T.K.*, 2022 WL 888943 at *11 (internal quotations omitted). And while the case did not settle at the settlement conference, Judge Fuentes continued to assist the parties in negotiations over the ensuing weeks. *See, e.g., Charvat*, 2019 WL 5576932 at *5 (finding arm's-length negotiation factor met where "[t]he parties attended a full day of mediation that, after initially failing to result in a settlement, finally jumpstarted negotiations between the parties"); *Young v. Rolling in the Dough, Inc.*, 2020 WL 969616, at *4 (N.D. Ill. Feb. 27, 2020) (recognizing class settlement "clearly" the product of arm's-length negotiation where agreement reached only after a contested motion, extensive discovery, and an unsuccessful settlement conference before a magistrate judge).

What's more, the arm's-length nature of these negotiations is further confirmed by the Settlement itself: it is non-reversionary, provides higher cash payments than comparable data privacy-related settlements to Settlement Class Members who submit a simple Claim Form, and contains no provisions that might suggest fraud or collusion.

**3. The Relief Provided for the Class Is Adequate.**

The next Rule 23(e)(2) factor—whether "the relief provided for the class is adequate"—includes four express considerations to take into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule

23(e)(3). Fed. R. Civ. P. 23(e)(2)(C). Each of these considerations favors finding that the relief provided here is more than adequate.

#### a) The Benefits Of Settlement Outweigh The Cost, Risk, And Delay Of Further Litigation.

Although the "costs, risks, and delay" consideration was not expressly included in Rule 23 until 2018, the Seventh Circuit has long required courts to consider "the strength of plaintiff's case on the merits balanced against the amount offered in settlement," as well as the "likely complexity, length and expense of the litigation." *T.K.*, 2022 WL 888943 at *12 (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). That precedent informs the Court's assessment of the "costs, risks, and delay" consideration of Rule 23(e)(2)(C)(i). *Id.*; *see also* 2018 Committee Notes (explaining that 2018 amendment's listing of settlement approval factors was not meant to displace any court-made factors, but simply to focus courts and parties on a shorter list of core concerns). Here, when balanced against the downsides of continued litigation, the benefits of the proposed Settlement are clear.

The Settlement Agreement creates a non-reversionary fund of $375,000 covering the claims of the potential Settlement Class Members. Class Counsel estimate that each claiming Settlement Class Member will receive a net payment of $30-$60. This recovery per claiming Settlement Class Member meets or exceeds comparable settlements. *See, e.g.*, *Jackson v. Fandango Media, LLC*, Case No. 2023LA000631 (Ill. Cir. Ct. DuPage Cnty.) (providing claiming class members $5 cash payment or $15 movie ticket voucher); *Beltran et al v. Sony Pictures Entertainment, Inc.*, 1:22-cv-04858 (N.D. Ill.) (providing approximately $30 per class member); *Saarloos v. The Cowboy Channel, LLC*, Case No. 5:24-cv-02058-KK-SP (C.D. Cal.) (providing approximately $6.45 per class member).

Importantly, this relief to the Settlement Class is immediate, avoiding potentially years of complex litigation and appeals. *Goldsmith v. Tech. Sols. Co.*, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."). Furthermore, the risk of obtaining *no* relief through continued litigation is significant, especially in the context of a rapidly evolving landscape of data privacy claims. Indeed, Defendant would re-raise many of its motion to dismiss arguments at summary judgment or on appeal. Moreover, Defendant was prepared to raise a host of defenses at class certification, any one of which, if successful, would leave the Class with no recovery at all.

In short, "any relief to class members would still be far down the road and may ultimately be entirely denied." *Charvat*, 2019 WL 5576932 at *7. In contrast, "[a]pproving the proposed settlement agreement will end the case and cause benefits to flow in short order." *Id*; *see also Young*, 2020 WL 969616 at *5 ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort.").

**b) The Proposed Method Of Distributing Relief To The Settlement Class Is Effective.**

The "method of distributing relief" consideration looks to whether the methods proposed for processing claims are "so complex that they discourage class members from pursing valid claims." *T.K.*, 2022 WL 888943 at *14. "A requirement that potential claimants fill out a form in order to collect from the settlement fund seldom raises such concerns." *Id*. That's all that's required from Settlement Class Members here. The Claim Form "is not unduly burdensome, long, or complex." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 591 (N.D. Ill. 2011). "All information called for on the form is required of the claims administrator in order for it to process claims." *Id*. Furthermore, "[t]he parties' use of a settlement website … suggests that the claims process was

designed to encourage—not discourage—the filing of claims." *Id*. "For example, the ability to submit a claim online through the settlement website allow[s] Class Members to submit a claim without the need to pay for a stamp." *Id*. The Settlement also offers Class Members easy options for receiving their payment, including Venmo, Zelle, Paypal, or check. (Settlement § 2.1(b).)

**c) The Terms Of The Requested Attorneys' Fees Are Reasonable.**

The next consideration under Rule 23(e)(2)(C)'s evaluation of the adequacy of relief are "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). If the Settlement is preliminarily approved, proposed Class Counsel intends to petition the Court for an award of attorneys' fees not to exceed 35% of Settlement Fund. "[T]he percentage method is employed by the vast majority of courts in the Seventh Circuit," and "the typical fee [is] between 33 and 40 percent." *T.K.*, 2022 WL 888943 at *24 (quotations omitted); *see also*, *e.g.*, *Alvarado v. Int'l Laser Prods., Inc.*, No. 18-cv-7756, Dkt. 70 (N.D. Ill. Jan. 24, 2020) (awarding 35% of fund); *Lopez-McNear*, No. 19-cv-2390, Dkt. 69 (awarding 35% of fund); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 1:18-cv-07018, Dkt. 57 (N.D. Ill. Sept. 10, 2020) (awarding 35% of fund).

As will be discussed further in a subsequently filed fee petition, the attorneys' fees sought "are reasonable in light of the Class Counsel's work, their investment of resources in the case, their prosecution of the action for the benefit of the Settlement Class, the risks that they faced in the litigation, and the overall benefit of the Settlement achieved." *T.K.*, 2022 WL 888943 at *15. For the immediate purposes of evaluating the adequacy of relief under Rule 23(e)(2)(C), however, the important thing to note is that the Court's decision on settlement approval is completely distinct from its determination of fees. *Id*. ("Most importantly, with respect to the Court's consideration of the Settlement's fairness, the approval of attorneys' fees remains entirely separate from approval

of the Settlement.”).

**d) There Are No Side Agreements Separate From The Settlement Agreement.**

The last consideration in Rule 23(e)(2)’s assessment of the adequacy of relief requires this Court to take into account “any agreement made in connection with the [proposed settlement].” Fed. R. Civ. P. 23(e)(2)(C)(iv), (3). This consideration ensures that the Court is aware of any “related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others.” Fed. R. Civ. P. 23(e)(2) Advisory Committee’s Note to 2003 Amendment. Here, there are no such agreements; all terms and agreements affecting Settlement Class Members are contained within the Settlement Agreement.

In sum, each of the four express considerations of Rule 23(e)(2)(C)’s adequacy of relief requirement suggest that this factor is satisfied here.

**4. The Settlement Treats Class Members Equitably.**

In addition to adequate representation, arm’s-length negotiation, and adequacy of relief, the final factor in determining whether a proposed settlement is fair, reasonable, and adequate—and thus deserving of preliminary approval—is whether “the proposal treats class members equitably relative to each other.” Fed. R. Civ. P. 23(e)(2)(D). “Generally, a settlement that provides for pro rata shares to each class member will meet this standard.” *T.K.*, 2022 WL 888943 at *15; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 840–41 (1999) (describing pro rata distribution of fund as a “straightforward model[] of equitable treatment”). That’s precisely what the Settlement Agreement provides here: each claiming Settlement Class Member will receive a *pro rata* share of the Settlement Fund. Admittedly, Plaintiff seeks a service award for herself and, if approved, would therefore receive more of the Settlement Fund than other Class Members. But

"equitably relative to each other" does not mean "equally to each other," and absent unusual circumstances, a modest service award to a class representative does not render a proposed settlement unfair, unreasonable, or inadequate. *See T.K.*, 2022 WL 888943 at *15–16 (service awards did not render treatment of class members inequitable, noting that "[b]ecause class representatives do more work and take more risks than the average class member, service awards to named class members will generally not raise a red flag") (quotations omitted). The proposed Settlement Agreement treats all Class Members equitably relative to each other, and all four Rule 23(e)(2) factors thus support preliminary approval here.

### C. The Proposed Notice Plans Should Be Approved in Form and Substance

As shown above, the proposed Settlement Class can be certified, and the proposed Settlement Agreement can be approved. Consequently, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Furthermore, because Plaintiff seeks certification under Rule 23(b)(3), the notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice may be provided to the Settlement Class via "United States mail, electronic means, or other appropriate means," and must describe "clearly and concisely … in plain, easily understood language" the nature of the action, the definition of the Settlement Class, the claims and defenses at issue, class members' right to appear through counsel if so desired, class members' right to request exclusion from the Settlement Class, the time and manner for requesting exclusion, and the binding effect of a class judgment on all Settlement Class Members. *Id*.

Here, the Settlement Agreement sets out a comprehensive notice plan focused on providing direct notice and a reminder notice to all Settlement Class Members via email. For any emails that result in a "bounce-back," the Settlement Administrator will attempt to resend the email.

(Settlement § 4.2.)

Finally, the Settlement Administrator will establish and maintain a Settlement Website, which will include notice of the Settlement Agreement, relevant case documents, and the ability to file Claim Forms online or download them in hardcopy form. (*Id.* § 4.1(d).)

All in all, the proposed notice plan is designed to provide information about the proposed Settlement Agreement and Settlement Class Members' rights under it in plain, easily understood language directly to all Settlement Class Members. It is the best notice practicable, and this Court should approve the notice plan as set forth in the Settlement Agreement.

## V. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Finally, if, as requested, this Court finds that the Settlement Class is certifiable, it should appoint Plaintiff's counsel as class counsel. *See* Fed. R. Civ. P. 23(g). In appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action, (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserting in the action, (iii) counsel's knowledge of the applicable law, and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

As discussed in Section IV(A)(4) above, proposed Class Counsel have extensive experience in litigating consumer privacy class actions; have thoroughly investigated the claims at issue; and have the resources necessary to conduct this litigation. *See* Leslie Decl. ¶¶ 11-13, 19; Exhibit 3. All of the Rule 23(g)(1)(A) considerations thus support the appointment of Plaintiff's counsel as Class Counsel in this case. *See Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2020 WL 4345418, at *8 n.8 (N.D. Ill. July 29, 2020) ("The analysis under Rule 23(g) builds on the standards that courts developed in scrutinizing the adequacy of class counsel under Rule 23(a)(4) rather than introducing an entirely new element into the class certification process.") (quotations omitted). This Court should do the same here.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order (1) preliminarily approving the proposed Settlement Agreement; (2) certifying the proposed Settlement Class for settlement purposes with Plaintiff serving as class representative; (3) directing that notice be provided to Settlement Class Members pursuant to the notice plan set forth in the Settlement Agreement; (4) appointing Bursor & Fisher, P.A. as Class Counsel, (5) scheduling a final fairness hearing in this matter, and (6) providing such other and further relief as the Court deems reasonable and just.[3]

Dated: August 25, 2026

Respectfully submitted,

*/s/ Alec M. Leslie*
Alec M. Leslie

**BURSOR & FISHER, P.A.**
Alec M. Leslie
1330 Avenue of Americas, 32nd Fl.
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: aleslie@bursor.com

**BURSOR & FISHER, P.A.**
Stephen A. Beck
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: sbeck@bursor.com

*Proposed Class Counsel*

[3] Plaintiff will submit a proposed Preliminary Approval order through the Court's proposed order email inbox.